OBE HARRIS v. THE STATE.

*No. 838.    Decided June 3rd, 1896.*

**Aggravated Assault—Self-Defense—Apparent Danger—Charge.**

See opinion for facts stated on a trial for aggravated assault, upon which it is
Held: The court erred in refusing to give defendant's special requested instructions
on apparent danger, where the charge given predicated the right of self-defense
alone upon and limited it to actual or real danger.

APPEAL from the County Court of Hamilton.    Tried below before
Hon. J. C. MAIN, County Judge.

Appeal from a conviction for aggravated assault; penalty, a fine of
$25.

[No brief for appellant.]

*Mann Trice,* Assistant Attorney-General, for the State, confessed
error.

HENDERSON, JUDGE.—Appellant was convicted of an aggravated
assault, and his punishment assessed at a fine of $25, and prosecutes this
appeal.    Briefly, the facts show that there was some difference pending
between Will Baxter, the assaulted party, and B. Nanny and his son,
Jim Nanny, in regard to a scandal charged to have been circulated by
Will Baxter in regard to Jim Nanny.    On the night when the difficulty
occurred it appears that the Baxter boys (four or five brothers) and the
Harris boys (three or four brothers) and the two Nannys were attending
a dance in the neighborhood. The Nannys met Will Baxter, and wanted
an explanation in regard to the alleged slanderous words which appeared
to be with reference to the parentage of some illegitimate child in the
neighborhood.    During the altercation Will Baxter proposed to prove
what he had said about the matter by the defendant, Obe Harris. (This
altercation occurred outside in the yard, and at that time Obe Harris
was in the house, engaged in the dance.)    Will Baxter stepped to the
house, and called him out.    He came out, and it then appears that Wil-
Baxter asked appellant to tell B. Nanny what he had heard him (witness)
say about that scandal. Defendant replied: "Well, I heard you say that
any man that said you were the father of that child was a damned liar."
Baxter said: "Well, go on, and tell the balance of it." Defendant said
he did not remember anything else, but told Baxter that he might refresh
his memory by stating what it was.    Baxter asked him if he did not re-
member that he told him that he (Baxter) did not believe that Jim Nanny
was guilty of being the father of the child.    Defendant said, "No," he
didn't remember anything about that; and said that he had never heard
of that until about a week before.    Baxter then said it was strange
some people could not recollect anything.    Defendant asked him if he
thought he had "stumped" up something and told it.    Baxter said,

"No," but asked defendant if he meant to say that he had never heard of that until about a week ago. Defendant said he did. Baxter then called him a damned liar. Appellant called him another. Baxter made for him. This is substantially the testimony of all of the witnesses up to the very time of the rencounter. At this juncture all agree that appellant stepped back a step or two, and that Will Baxter made for him—some say rushed at him, and struck him. The first blow was about the head or face. They agree that this blow either knocked the defendant completely or partially down against a wire fence. The witness, Will Baxter, as to the time when he was cut by the defendant, appears to put it after this rencounter. His language in this regard is as follows: "He fell into the wire fence, and got out, and went around to my left. He struck me with something sharp, and cut me on my side." On this same point, on cross-examination, he says: "I picked up something immediately after he got up. I don't know whether it was a rock or not. I told the boys that the damned scoundrel had cut me; to kill him." There were eight or nine other witnesses who testified to the facts attending the difficulty, and the testimony of each of the witnesses indicates that the cutting occurred in the rencounter, when the prosecutor, Baxter, rushed at the defendant, and before he knocked the defendant down, and did not occur afterwards. Some of the witnesses for the defense speak of the lick of the prosecutor in which he knocked the defendant down as having been made by something other than the hand or fist from the sound of the same. All of them concur in stating that it was a dark night, and that they did not see anything in the prosecutor's hand, nor did they see anything in the hand of the defendant. It is also shown that as soon as defendant got up he said to Baxter, "If you come on me again, I will hurt you bad." Appellant, after the difficulty, was found to be severely wounded about the forehead, and witnesses testify that the wounds indicated that they were not inflicted with the hands or fists, and that it could not have been done with the wire fence. The prosecutor, Will Baxter, was found to have been severely cut between the sixth and seventh ribs, the knife having penetrated three inches from the heart; and he was confined to his bed for several weeks. This is a substantial summary of the material facts in the case. If it be true, as the evidence of the prosecutor, Will Baxter, appears to indicate, that the defendant stabbed him after the prosecutor had knocked him down, then, at the most, appellant was only guilty of an aggravated assault. If, however, the stabbing occurred in the rencounter between the parties, appellant may have been guilty of an aggravated assault, or he may have acted in self-defense. In this connection complaint is made of the charge of the court and of the failure of the court to instruct the jury as requested by the appellant. This being a misdemeanor case the court was not bound to instruct the jury until requested in writing, and the case could only be revised as to the charges of the court given, if said charges misdirected the jury upon some material point, containing some erroneous legal proposition that

might prejudice the appellant. If, however, appellant requested a charge upon a material issue in the case, and the same was not given, and he reserved his exception thereto, it will be the duty of this court to reverse the case. It occurs to us that, inasmuch as all the witnesses concur in stating that the prosecutor, Will Baxter, was the aggressor, and himself committed the first assault, the appellant could be held liable only upon one theory; that is, that he used more force than was reasonably necessary in his self-defense, either against an attack indicating actual danger or an attack indicating apparent danger. If Baxter attacked defendant only with his hands and fists, and there was no actual danger and no apparent danger to his life or of serious bodily injury, then defendant would not have had the right in self-defense to have used a deadly weapon upon Baxter. But if, on the other hand, Baxter was attacking the defendant with some deadly weapon, or was apparently so attacking him, which caused him to reasonably believe that his life was in danger, or his person in danger of serious bodily injury, then he would have the right in self-defense to use a deadly weapon for his protection. Now, what were the peculiar circumstances attending this assault by Baxter on the defendant? It will be borne in mind that it was a dark night; that none of the witnesses could see what either of the parties had; that the appellant had been invited from the house out into the yard by Baxter, and that he requested him to make a statement as to the alleged scandal he (Baxter) was charged with having uttered against Jim Nanny; that the defendant stated what he remembered Baxter had said about it. Baxter insisted that that was not all that he remembered, and should state what else he said about the matter. Defendant did not remember it. Baxter told him that he had a bad memory, and defendant wanted to know if he accused him of "stumping" up something against him? Defendant said he had never heard what Baxter said until about a week before that. Baxter thereupon called him a damned liar. Defendant called him another, and Baxter immediately rushed upon him. Judging of the attack from the appellant's standpoint, what were the appearances to him? According to his own testimony, defendant says that when Baxter called him a damned liar he then opened his knife. As Baxter rushed upon him, he stepped back a step or two, and to use his own language: "It was very dark, and I was excited and scared, and could not tell what he was going to strike me with; but I only wanted to defend myself, and I thought a man had the right to do that. I don't know what he struck me with, but it made a terrible noise, and knocked me down, and cut three places on my face, and made a large blue and black place on my face that was there for several days." Could he have reasonably apprehended that the defendant was only attacking him with his hands and fists, or was it his duty, under the circumstances of the assault, to await his attack in the darkness, in order to ascertain with what he was being assaulted, or did he have the right to draw his knife in order to protect himself against any assault made by his assailant. Was it not a duty

he owed himself, under the circumstances, to be prepared against a deadly assault, or was it his duty to wait and see if the assault being made was of a deadly character, before he was authorized to begin to act in order to repel it? In our opinion, whether the prosecutor, Baxter, was armed with a deadly weapon or not, defendant had a right to act on the danger as it appeared to him at the time, and be prepared to shield himself against any assault which might be made. And in this connection it was the duty of the court, when asked by appellant, to give him the benefit of a charge on apparent danger, and not confine this case, as was done in the charge, to limit his self-defense predicated alone on actual danger. For the refusal of the court to give the charge asked by appellant on apparent danger, this case must be reversed and remanded, and it is accordingly so ordered.

*Reversed and Remanded.*

Hurt, Presiding Judge, absent.